Isaac Spencer and others *vs.* Catharine Pearce, Administratrix of James Pearce, Sen.—*December* 1838.

Sales made by sheriffs are embraced by the provisions of the statute of frauds and perjuries, but such sales may be taken out of its operation by parol evidence, unless such evidence is excepted to in the Chancery court.

Where the land of a deceased debtor is decreed to be sold for the payment of his debts, upon the application of a creditor whose claim is for the purchase money of land bought by such debtor, it is proper that the land so purchased, should be sold in the first instance.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 4th December 1827, by *James Pearce* executor of *James Pearce*, and alleged, that upon a bill filed on the 3rd December 1811, the real estate of a certain *John Voorhees* was decreed to be sold for the payment of debts, and that *William Spencer* was appointed trustee to make such sale; that he made various sales which were duly ratified, and among others one tract of land was sold to a certain *Benjamin Terry* for the sum of $1184.22; that he took from said *Terry* his bond for the purchase money, which he the said *Spencer* sued at law to judgment; an execution of *fieri facias* was levied upon the property real and personal of the said *Benjamin Terry;* that afterwards upon a writ of *venditioni exponas*, the property of said *Terry* was struck off and sold to the said *William Spencer;* that the purchase money exceeded $2000, and that in fact more money was bid by *George Beaston*, than would have paid all the debt, damages, interest, costs and charges, then due from said *Terry* to *William Spencer* as trustee, and which would have been paid by said *Beaston* if he had been the purchaser and had not been outbid; that after the said sale, the said *Benjamin Terry* drew an order upon the sheriff of *Cecil* county, for about the sum of $115 on account of the difference between the amount of the money due upon the above mentioned execution and the amount which was bid by the said *William Spencer* for the aforesaid land at the sheriff's sale, and the amount of the said order was paid by the said sheriff, and which sum the complainant supposes had been previously paid said sheriff by the said *William Spencer*, or by his executor *Isaac Spencer;* that the said sheriff has never returned the said *venditioni exponas* to the Court of Appeals, from which it issued; that the said *Terry* then rented the said land from said *William Spencer*, and has so held possession to the time of filing the bill in this cause; that *William Spencer* is dead, leaving real estate, his personal estate being insufficient to pay his debts. The bill then proceeded to make the heirs at law of *William Spencer* and *Benjamin Terry* parties as defendants, and prayed for a sale of the real estate of *Wil-*

*liam Spencer,* and particularly for a resale of the land bought, as alleged by *William Spencer,* at sheriff's sale as aforesaid, &c.

The *fieri facias* relied on, upon which the *vendi* before mentioned issued, was levied 26th May 1821, and returned as follows:

" Levied as per schedule and on hand for want of buyers. *William Moffit,* sheriff."

A list of *Benjamin Terry's* property, taken in execution by virtue of a *fi. fa.* issued at suit of *William Spencer,* trustee of *John Vorhees,* from the Court of ——, and returnable to June term 1821, No. 43, to wit:

"One tract or parcel of land containing 230 acres more or less, lying and being in Sassafras neck, in Cecil county, and on which the said *Benjamin Terry* now resides.

" *W. Moffit,* sheriff of *Cecil* county."

Several writs of venditioni exponas were thereupon issued, but no return was made as to the manner in which these were executed.

The answer of *Isaac Spencer,* executor of *William Spencer,* among other matters stated, that he had no personal knowledge of *William Spencer,* his testator, having bid off the land at the sale by the sheriff of *Cecil* county, which the said *Benjamin Terry* had purchased previously of respondent's testator, while acting as trustee for the sale of the real estate of *John Vorhees,* as stated in the bill, nor of *George Beaston* having bid for the same, or of his having been present at the sale; nor has he any knowledge of *William Spencer's* having paid to the sheriff of *Cecil* county or his deputy the sum of $115, or any other sum on the order of *Benjamin Terry,* in part payment of the purchase money for the same; but your respondent admits, that soon after the death of the said *William Spencer,* he paid to the deputy sheriff of *Cecil* county the sum of $223.88, on account of the said alleged sale, on a proved account exhibited by the deputy sheriff of *Cecil* county to this respondent as executor of *William Spencer;* nor has respondent any knowledge of any contract by his testator to sell the same, and that *Ben-*

*jamin Terry* continued to reside on the land till his death, which lately occurred. The answer admitted that *William Spencer* died in debt beyond his personal estate, &c.

In the progress of the cause, various bills of revivor were filed, new parties were made, infants and adults ignorant of the original transactions, some of whom relied on the statute of frauds against the alleged purchase by *William Spencer,* and a commission was issued, and the complainant proved, by *John Vezey Price,*

" That he knew the real estate of the late *William Spencer* lying and being in *Cecil* county, but does not know the estate in *Kent* county. The real estate lying in *Cecil* county, consisted of a farm purchased by said *William Spencer* at sheriff's sale; the annual value of which he supposes at this time about $100, but worth much more at the time of the purchase, which was in 1822, the same being at this time in a state of decay, particularly the buildings."

The witness further stated, that he knew the land in *Cecil* county of which the late *Benjamin Terry* died possessed, and that it was exposed to sale some time in the year 1822, at the suit of *William Spencer,* trustee for the sale of the real estate of *John Voorhees,* deceased,—that the said sale was made by a deputy of the then sheriff, *William Moffit,*—that *William Spencer, George Beaston* and *James Morgan* were bidders at the sale, and that the land was struck off to *William Spencer,* but he does not recollect the precise amount for which the same was sold. It was either for two thousand, or two thousand five hundred dollars.

At September term 1836, the Chancellor (BLAND) decreed that the real estate of which *William Spencer* died seized be sold for the payment of his debts, &c.

From this decree the representatives and heirs of *William Spencer* appealed. The reporters only state so much of the cause as will explain the decision of this court.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, and CHAMBERS, J.

By *W. A. Spencer* for the appellant, who relied upon the following points:

1st. That *William Spencer*, trustee, performed his duty as such until his death, and was guilty of no laches.

2nd. That there is no proof of the sale of *Terry's* land by the sheriff of *Cecil* county, and of *William Spencer's* having bid it off.

3rd. The evidence of the bidding is wholly defective.

4th. Supposing the sale proved, it was within the statute of frauds, and barred thereby, and *William Spencer* was not liable for the purchase money.

5th. The bill states the *venditioni exponas* to have been at the time of the sale in the hands of the sheriff, and there is no evidence to show that it was in his hands, and that he had any power to sell.

6th. The *venditioni exponas* was never returned to the court from whence it issued, and there is no memorandum in writing of the sale to gratify the requisitions of the statute of frauds.

7th. The *venditioni* was wholly defective in law, and insufficient to authorise the sheriff to make a sale under it.

8th. The levy by the sheriff insufficient, and no proof of *Terry's* land being included.

9th. The description of the land seized on the *fi. fa.* was too imperfect to pass title.

10th. The return describes *Terry's* land, the land affirmed by the bill to have been *Voorhees'* land, to contain 230 acres, whereas it contained only 117½ acres.

*Alexander* and *J. A. Pearce* for the appellee insisted:

1. That the personal estate of *William Spencer*, deceased, is shewn to have been exhausted, and that the appellee is shewn to be one of his unsatisfied creditors.

2. That it is clearly proved, that *William Spencer* in his life time purchased the real estate of *Benjamin Terry*, under the circumstances stated in the bill, and therefore his estate is accountable for the proceeds of that sale, to the extent of the claim on judgment against *Terry*.

3. That if the appellee cannot claim the amount of the above execution out of the proceeds of the real estate of *William Spencer*, he will at least be entitled to a decree for a sale of *Terry's* real estate, which is shown to have been taken under execution, as stated in the bill.

STEPHEN, J., delivered the opinion of the court.

The decree of the Chancellor in this case ought we think to be affirmed. It is true as contended by the counsel for the appellant, that sheriff's sales are embraced by the provisions of the statute of frauds and perjuries, but we are of opinion, that there is sufficient proof in the record, no part of which has been excepted to, to take the purchase of the late *William Spencer* out of its operation. In affirming the decree of the Chancellor, we think, however, that the same ought to be modified, by directing the trustee to sell, in the first instance, the land purchased by *Benjamin Terry* at the trustee's sale, for which purpose a decree with such modification will be signed by this court.

DECREE AFFIRMED WITH COSTS.