Sentman *vs*. Gamble, *et al.*

*Decree affirmed.*

(Decided 13th June, 1888.)

---

ELI S. SENTMAN *vs*. WILLIAM R. GAMBLE and others.

*Evidence admitted Generally, without Objection—How treated in the Court of Appeals—Sale—Partial failure of Consideration—Recoupment—Appeal.*

Where in the trial of a cause in the lower Court, evidence is admitted generally, without objection, and no attempt is made to confine or limit its effect, it must be treated in the Court of Appeals as in for all purposes.

By a written contract under seal, plaintiff agreed to sell to defendants "all the wood," with certain reservations and exceptions, that he had purchased by written agreement, the boundaries of said tract of woodland in neither contract being definitely described except the road referred to. In an action on a note given for the purchase money, it appeared from evidence given by both parties without objection, that prior to the execution of the written contract between them, plaintiff had pointed out an old fence as the eastern boundary line, and no instruction was asked and no attempt was made to confine its admissibility or effect. Between this fence and the true eastern boundary, as afterwards ascertained, there were twelve acres the wood on which did not belong to the plaintiff. The wood growing on those twelve acres formed part of the consideration of the note sued on. HELD:

1st. That as the evidence was let in generally, without objection, and no attempt was made in the Court below to confine or limit

its effect, it must be treated by the Court of Appeals as in for all purposes, without regard to its effect upon the written contract.

2nd. That to the extent of the twelve acres there was a failure of consideration of the note sued on, and as the suit was between the original parties to the note, the defendants had a right to set up and recoup this partial failure of consideration, notwithstanding they had held on to their contract as to the residue of the wood.

A verdict was rendered on the 3rd of February, 1887, and was regarded by the Court below as a verdict for the plaintiff, and judgment was accordingly entered in his favor. The Court of Appeals reversed the judgment on a writ of error sued out by defendants, and decided that judgment should be entered for them. The judgment was accordingly entered on the 5th of January, 1888, and an appeal was prayed by the plaintiff on the same day. HELD:

That the appeal was taken in due time after the judgment in favor of the defendants was rendered, and could not have been taken before.

APPEAL from the Circuit Court for Cecil County.

The opinion of the Court, together with the statement of Judge BRYAN, filed at the January Term, 1888, and now reported, present the facts of the case very fully.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J., and re-argued before the same Judges, together with Judge STONE.

*Albert Constable,* for the appellant.

"When the contract is reduced to writing, everything that the writing does not contain is presumably excluded from the contract." *Hare on Contracts,* 532, 533; *Kain vs. Old,* 2 *Barn. & C.,* 634; *Chanter vs. Hopkins,* 4 *Mees. & W.,* 406;

Of course if Sentman made any such representations fraudulently to induce them to enter into the written contract, appellees would be entitled to recoup their damages for the fraud in this action. That is not denied. But if he made such representations *in perfect good faith, upon reasonable information, without either recklessness or negligence* upon his part, then he is not responsible if the fact turn out to be incorrect. If the alleged representation be neither a term in the contract, nor fraudulent, how can Sentman be liable in damages in a Court of law? No doubt the appellees would not be without remedy. The contract might be reformed in a Court of equity, or perhaps rescinded for mistake, and there may be other remedies open to them in a Court of equity, which it is not necessary here to discuss. But that a representation, not a part of the contract, and not fraudulent, can make a party liable in damages in a Court of law, is unsupported by authority; with the exception of several well recognized classes of contracts, namely, contracts of marine or fire insurance, contracts for the sale of lands, and contracts for the purchase of shares in companies. *Anson on Contracts,* 136, 137, 145; *Pollock on Contracts,* 485, 492, 479, 483, (*4th Eng. Ed.*); *Joliffe vs. Baker, L. R.,* 11 *Q. B. D.,* 255; *Weir vs. Bell, L. R.,* 3 *Ex. Div.,* 238, 243; *Alderson vs. Maddison, L. R.,* 5 *Ex. Div.,* 296; *Smallcombe's Case, L. R.,* 3 *Eq.,* 769; *Brownlie vs. Campbell, L. R.,* 5 *App. Cases,* 952, 953; *Pasley vs. Freeman,* 3 *Term R.,* 51; 2 *Sm. L. C.,* 66; *Flower vs. Farwell,* 18 *Brad.,* (*Ill.,*) 254; *Bokee vs. Walker,* 14 *Pa. St.,* 139; *Erie City Iron Works vs. Barber,* 106 *Pa. St.,* 125; *Lord vs. Goddard,* 13 *Howard,* 198; *Thorwegan vs. King,* 111 *U. S.,* 553; *Benjamin on Sales, sec.* 429; *Bigelow on Fraud,* 60; *Peek vs. Gurney, L. R.,* 6 *H. L., Eng. & Ir. App.,* 390.

The appellees hold on to the wood on the tract bought —all the wood mentioned in the written contract of purchase, and in addition seek to get (and did get by

Sentman *vs.* Gamble, *et al.*

their prayer) the value of the wood on the twelve acres which was not purchased. Upon what possible theory can such a claim be based ? The appellees would not be entitled to rescind without restoring the consideration of the contract. *Snow vs. Alley,* 144 *Mass.,* 546.

Even had the alleged representation been fraudulent the value of the wood on the twelve acres would not have been the measure of damage. To give them the value of the wood is to give them *lost profits* on a contract which the parties have not made. Had the representation been actionable in a Court of law, the measure would have been the damage for the *wrong,* not the lost profits.

*\*William S. Evans, J. W. Falls,* and *Robert C. Thackery,* for the appellees.

The whole question in the case is whether or not, in this form of action, the appellees could recoup damages suffered by them, by means of representations concerning the subject-matter of the contract, made by the appellant either fraudulently or falsely in fact ?

That they could so recoup would seem to be sustained by the whole current of authority in Maryland; nor were they under any legal obligation to rescind the contract. *Groff vs. Hansel,* 33 *Md.,* 165 ; *Gunby vs. Sluter,* 44 *Md.,* 247, 248 ; *Marbury vs. Stonestreet,* 1 *Md.,* 154 ; *Myers vs. Smith & Barrick,* 27 *Md.,* 43 ; *Beall vs. Pearre,* 12 *Md.,* 550 ; *Abbott vs. Gatch,* 13 *Md.,* 315 ; *Warfield vs. Booth,* 33 *Md.,* 72 ; *Lee vs. Rutledge,* 51 *Md.,* 318.

MILLER, J., delivered the opinion of the Court.

The Court ordered this case to be re-argued, and a majority of the Judges who heard the re-argument are of opinion the judgment should be affirmed.

*Messrs. Evans and Falls appeared for the appellees when the case was heard at January Term, 1888, and Mr. Thackery alone appeared when the case was re-argued.

The note sued on was given in payment for wood, growing and standing upon a certain tract of woodland, sold by the plaintiff, Sentman, to the defendants Gamble and Logan. The subject-matter of the sale being growing wood or timber, it was a sale of goods only. *Smith vs. Bryan,* 5 *Md.,* 141.

The plaintiff having proved the execution of the note, the defendants then offered in evidence a contract for the sale of the wood, which was in writing and dated the 26th of February, 1886. By this contract Sentman agreed to sell to Gamble and Logan "all the wood" (with the exception of certain rails and posts already cut, and the chestnut timber fit to make rails and posts) which he, Sentman, had purchased from T. Snowden Thomas, by agreement dated the 22d of February, 1886, "said tract of woodland lying north of the east and west road connecting the road from Bay View to North East with that from Bay View to Charlestown, except a few acres on the west of the Bay View and Charlestown road, adjoining the land of S. P. Maffitt, for the sum of $300." By reference to the contract between Sentman and Thomas, which was also in writing, and was afterwards offered in evidence by the plaintiff, we find the same description of the tract except that the words "said Thomas' tract of woodland, part of 'Russell's Union'" are used. So far as the description of *boundaries* is concerned the two contracts are identical. In neither of them is any boundary definitely described except the road referred to, and in neither of them is any mention made of the eastern boundary, separating the lands of Thomas from those of McDaniel.

Having offered this contract in evidence, Gamble, one of the defendants, testified that *before* the contract was signed he went with the plaintiff and Logan to the tract several times to examine it; that they walked over the land and examined the wood; that the plaintiff pointed

out to them the boundaries and told them that the eastern boundary, between the Thomas tract and the land of McDaniel, *was marked by an old fence;* that neither witness nor Logan knew where the boundaries of the Thomas tract were, and that relying on said representation of the plaintiff in regard to the eastern boundary, witness signed the contract; that he and Logan then put men in the woods and cut timber next to the old fence, which plaintiff had pointed out to them as the true line; that he afterwards learned he had been trespassing on McDaniel's land, and that the true eastern boundary line was to the westward of the old fence, and between that fence and the true line there were about twelve acres of land which belonged to McDaniel; that he and Logan had cut on these twelve acres about 100 cords of wood which they were compelled to leave there, and that McDaniel had sued them for the trespass; that the wood on these twelve acres would cut 28 cords to the acre, exclusive of chestnut rail timber and posts, and was worth standing in the woods seventy-five cents a cord net; that when he learned that McDaniel claimed these twelve acres, and had had the true line established, he went to the plaintiff, and endeavored to have the matter settled, but without effect; that at the time the error was discovered he had cut a portion of the wood on the true Thomas tract; that he then offered to Sentman to retire from the contract if he would pay him, but they could not come to terms and Sentman refused to leave the matter to be adjusted by arbitrators; that witness then thought he had better hold on to his contract and go ahead, and he then proceeded to cut the remaining wood on the Thomas tract and sold some of it as wood, and had other portions made into charcoal, and thought he had sold about 9000 bushels of charcoal. This witness also proved that a few days before the note sued

on became due, and before suit brought, he tendered the sum of $160 to the plaintiff which the latter refused to accept. The same facts as testified to by Gamble were also testified to by Logan.

The defendants then offered in evidence a survey and plat of the Thomas tract, showing its true eastern boundary as well as the location of the old fence, and proved by the surveyor that there were twelve acres between the true line and this fence.

The plaintiff then proved by himself as a witness, that prior to the contract of the 26th of February, he had been negotiating with Thomas for the purchase of the rail and post timber on this tract for the purpose of filling a fencing contract with the B. & O. Railroad Company; that he had no use for the cord wood on the land, but Logan and Gamble came to him and told him that if he would buy all the wood on the tract, they would purchase from him the cord wood for $300 and he could reserve the chestnut rail and post timber; that he knew nothing of the lines of the tract himself, but Thomas had walked with him over it, and had pointed out what he said were the boundaries, and pointed out the *old fence* as the boundary between himself and McDaniel; that he afterwards walked over the tract with Logan and Gamble and told them that Thomas had told him that this old fence was the eastern boundary of his tract; that he did not profess to know anything about the lines himself, but merely repeated to them what Thomas had told him, and told them that Thomas had so told him; that relying on what Thomas had told him, witness believed this fence to be the true eastern boundary, and so believing he had a large number of chestnut trees growing on the land between the true line as shown by the plat and the old fence, cut and made into posts and rails, a portion of which he had hauled off, and

after the true line was discovered he had been compelled to leave the rails and posts he had not hauled off, and to haul back those he had taken away; that after he had walked over the tract with Gamble and Logan as aforesaid, he bought from Thomas all the wood growing thereon for $500, by a written contract dated the 22nd of February, which he produced and offered in evidence. This contract has already been sufficiently described. The plaintiff further testified that he acted in perfect *good faith* in making the representations to Gamble and Logan in regard to the old fence as the eastern boundary; that he made it solely upon the representations made to him by Thomas and told them so at the time, and that he was as much deceived as they were, and lost his chestnut which he had cut; that after the survey, disclosing the error, had been made, he saw Logan and Gamble and offered to relieve them of their contract and pay them their expenses of getting the wood, if they would surrender the contract, but they refused to do so and said they would hold on to their contract. On cross-examination plaintiff admitted he was not the agent of Gamble and Logan to purchase the cord wood for them from Thomas, but that he had purchased it to make out of it what he could for himself by a resale to them. Boyd, another witness for the plaintiff, testified that he had by the orders and direction of Thomas cut cross-ties on the land lying west of the old fence, and that McDaniel who owned the adjoining land had made a fuss about it.

The defendants then produced Thomas as witness, who testified that some months prior to the signing of the contract of the 22nd of February, he had sold plaintiff leave to cut chestnut for posts and rails; that afterwards, and sometime before the contract was signed, plaintiff had offered, and witness agreed to sell

him all the wood on the tract for $500, including the rails and posts already cut; that on the day the contract was signed the plaintiff came to him and asked him to have it put in writing, which was done, and both parties signed it; that he and plaintiff had been over the land several times prior to the purchase of the wood and he had pointed out the lines in a general way, but had *never pointed out the old fence* as one of the lines, but pointed out the beginning point as laid down on the plat, *and told him it was a due north and south line between himself and McDaniel.* Logan and Gamble further testified that the plaintiff had already purchased from Thomas before they approached him, and had heard him attempting to sell the wood to a man named Clayton before that time.

Such is the evidence on both sides as disclosed by the record. We have done the unusual thing of setting it out in detail in the opinion, because, having granted the motion for a re-argument, we desire the real merits of the case as disclosed by the testimony, as well as the grounds of our present decision, should clearly appear. It is to be especially noted that all this testimony was admitted without any objection on any ground to the admissibility of any portion of it for any purpose whatever, being made by the plaintiff.

Upon the testimony thus let in both sides asked instructions from the Court. The five asked by the plaintiff were all rejected, and of these the second, third and fourth have been abandoned in this Court. The stress of the argument made by the able counsel for the appellant, has been very properly addressed to the granting of the single instruction asked by the defendants, for we think it very clear that if this instruction be correct it covers the whole law of the case. By it the jury were instructed that if they believe from the evidence that Gamble and Logan

Sentman *vs.* Gamble, *et al.*

were induced to enter into the contract of the 26th of February, 1886, by the representation of the plaintiff, that he was the owner of the wood on the tract of land mentioned in the evidence up to the fence laid down on the plat offered in evidence, and that but for such representations they would not have entered into said contract, and if they further believe that the plaintiff was not the owner of said wood beyond the red divisional line on the east laid down on said plat, then the defendants are entitled to a deduction from the amount of the note sued on, to the extent of the value of the wood on the portion of land between said fence and the division line, and such reasonable expenses, if any, as the jury may find the defendants incurred in cutting the wood on said portion of land, *provided* the jury further find that said representation was made by the plaintiff either *fraudulently, or falsely in point of fact.*

This instruction places the right of recoupment or abatement of the purchase money on two grounds, *first*, if the jury found the representation was fraudulently made, and *second*, if they found it was false in point of fact, though it may have been made innocently and in good faith.

In regard to the first ground there is no dispute. It is conceded that if the representation was fraudulently made (and we may remark there was evidence from which the jury could have so found,) and the defendants were thereby induced to sign the written contract, the right of recoupment is unquestionable, because in that case the defendants could have sued the plaintiff in an action of deceit for the fraud he had perpetrated upon them which induced them to enter into the contract, and in order to avoid circuity of action, the law allows them to recoup the damages sustained by the fraud, when he undertakes to enforce against them the note obtained by means of the fraud.

Sentman *vs.* Gamble, *et al.*

But it is strenuously contended that if the representation was made innocently and in good faith, there can, in this case, be no abatement of the purchase money. The principal ground taken in support of this position is, as we understand it, that the written agreement is the only evidence of what the contract between the parties was; that by the true construction of this instrument the wood sold was the wood on the Thomas tract, and only embraced the wood within the true lines of that tract wherever they might be found to be; that if it was the intention of the parties on the one side to sell, and on the other to buy the wood up to the old fence, they should have so stipulated in the written agreement; that to allow to this antecedent representation the effect of making the contract a sale of the wood up to the old fence, would be to vary or add a new term to the subsequent written instrument, in violation of the familiar rule that all antecedent negotiations and understandings are merged in the subsequent written agreement which is the only evidence of what the contract actually was, and hence this antecedent representation was only admissible upon the question of fraud, and was inadmissible and must be so treated by this Court, for the purpose of affecting the written contract. We think this is a substantial and fair statement of the position contended for.

Now assuming (but *ex gratia argumenti only*) that this representation has the effect of varying or adding to the written contract, and would have been inadmissible for that purpose if objection had been made to it on that ground at the trial, still the question arises, has this Court authority to decide in this case, that question, and treat the evidence as inadmissible for such purpose, when no such objection was made to it in the Court below?

This Court is strictly an appellate tribunal, and its power to decide certain questions has long since been limited by statute. Thus in appeals from Courts of equity, it has been the law of the State since the year 1832, that no ojection to the admissibility of evidence shall be made in the Court of Appeals, unless it appears by the record that such objection has been made by exceptions filed in the Court of equity where the case was tried. *Code, Art.* 5, *sec.* 26. Under this provision many decisions have been made in which this Court in obedience to this mandate of the Legislature, has found itself compelled to receive in the particular case, and give full effect to testimony which, if exception to it had been filed in the Court below, would have been ruled inadmissible under the plainest rules of evidence. In one case oral testimony as to a party having purchased land at a sheriff's sale, admitted without exception, was allowed to prove title in the purchaser notwithstanding the fact that sheriff's sales are within the Statute of Frauds, and must be evidenced by some memorandum in writing. *Spencer vs. Pearce,* 10 *G. & J.,* 294. In another case parol evidence that a lessor did not intend by a certain covenant in the lease, to bind his assigns, and that the words "heirs and assigns" were left out of the covenant, for this reason, having been admitted without exception, was allowed to have the effect of making the covenant personal in its character and not binding upon heirs or assigns. *Gibbs vs. Gale,* 7 *Md.,* 76. In that case it was argued by counsel for the appellant that the facts thus proved by parol could have no influence upon the intrepretation of the covenant, because to allow them any would be to violate the established rule which prohibits the introduction of parol evidence to contradict, or vary a written instrument, and that though the appellant could not, under

the statute, object in this Court to the *admissibility* of the evidence, he nevertheless had the right to insist that it should not be considered in the decision of the case. But the Court said they could not concur in this view, and "if the testimony be in the case it must be considered and allowed its full force."

Again in appeals from Courts of law a statute has existed since the year 1825, which declares that "the Court of Appeals shall in no case decide any point or question which does not appear by the record to have been raised, or made in, and decided by the Court below." *Code, Art.* 5, *sec.* 12. Under this it has been decided in cases at law, that evidence let in without objection, which was clearly inadmissible and would have been rejected had objection been made to it, is evidence in the cause, and must be treated as such by this Court, and allowed to have the same effect as if it had been admitted according to the strict rules of evidence. *Farmers Bank of Maryland vs. Duvall,* 7 *G. & J.,* 78; *Atwell vs. Grant,* 11 *Md.,* 101.

It frequently happens that evidence may be inadmissible if offered generally, and yet admissible for some special purpose. In such cases counsel for the party opposing its general admissibility, but conceding its admissibility for a special purpose, should, if he wishes the question to be decided by this Court, take the proper steps to that end. He should object to the testimony when offered generally, or ask from the Court an *instruction* confining its admission and effect to the particular purpose for which he concedes it to be admissible. But if evidence is let in generally without objection, and no attempt is made in the trial Court to confine or limit its effect, it is in for all purposes, and the decisions above cited are conclusive as to how it must be treated by this Court.

Here the representation in question was let in without objection, was in fact proved by both parties to have been made, and no instruction was asked and no attempt made in the Court below to confine its admissibility or effect, or to have the jury instructed that they could consider it only in case they found it was fraudulently made. Being thus in, this Court must, under the authorities above cited, treat it as in for all purposes, without regard to its effect upon the written contract. Under the testimony thus admitted, and upon the assumption that the representation was made in good faith, the real contract was a sale of the wood up to the line of the old fence, and the wood growing on the twelve acres between that fence and the true eastern line of the Thomas tract as afterwards ascertained, formed part of the consideration of the note sued on. In the absence of fraud, no one can doubt upon this testimony, but that such was the actual contract between them, and that they both so understood it when the note was given. The case then becomes a very plain one. The plaintiff sold to the defendants the wood growing on a certain tract of land and up to a certain line, and they gave him their note for the purchase money. It afterwards turned out that twelve acres of the wood thus sold did not belong to the plaintiff, and he had, therefore, no right to sell it. To the extent of these twelve acres there was a failure of consideration of the note sued on. The suit is between the original parties to the note, and we think there can be no doubt as to the right of the defendants to set up in this action, this partial failure of consideration, notwithstanding they have held on to their contract as to the residue of the wood. This proposition we consider a plain one. If authority upon the subject be needed we refer to the case of *Groff vs. Hansel*, 33 *Md.*, 165,

where the Court said that "where there has been a failure of consideration total or partial, or a breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by a party when sued upon such contracts, and he shall not be driven to assert them either for protection or as a ground for compensation in a cross-action." If a vendor sells the wood growing on *fifty* acres of woodland, and the vendee gives him his note for the purchase money, and it afterwards turns out that the vendor had but *forty* acres, and suit is brought on the note by the vendor against the vendee, we hold that the latter may set up the partial failure of consideration in that action, even if he has proceeded to cut and take away the wood on the forty acres, and that he shall not be compelled to pay the note in full, and then sue the vendor for his breach of contract in reference to the *ten* acres. This proposition seems so consonant with reason and justice, that even if there has been any doubt upon the subject in other jurisdictions, we shall endeavor to make it the law in this State by the affirmance of this judgment.

We are all of opinion that the motion to dismiss must be overruled. The appeal was taken in due time after the judgment in favor of the defendants was rendered, and could not have been taken before.

*Judgment affirmed.*

(Decided 14th June, 1888.)

BRYAN, J., delivered the following dissenting opinion:

Since the motion for re-argument in this case, there has been considerable discussion among the Judges about the interpretation and effect of the written contract. It will enable me to set my views in a clearer light, if I quote all that portion of it, which has any bearing on this controversy. It is as follows: "The

said party of the first part hereby covenants and agrees, to and with the said parties of the second part, to sell unto them all the wood, with the reservations and exceptions hereinafter contained, purchased by the said party of the first part from one T. Snowden Thomas, by agreement dated February twenty-second, of the year eighteen hundred and eighty-six; said tract of woodland lying north of the east and west road connecting the road from Bay —— to North East, with that from Bay View to Charlestown, except a few acres on the west of the Bay View and Charlestown road, adjoining the land of S. P. Maffitt, for the sum of three hundred dollars, to be paid on or before the twenty-second day of August, in the present and current year. And the said party of the first part hereby reserves all the rails and posts now cut on said tract, and the further right to cut and remove all chestnut timber on said tract that will make rails and posts." The agreement with Thomas shows that Sentman had bought the wood on Thomas' tract of woodland; and the tract is described in the same terms as those used in the contract above quoted. It will be seen that no boundaries of the tract are given. It is described in a general way as lying north of a certain road, a few acres adjoining the land of one Maffitt being excepted from the operation of the contract. Probably no well-informed lawyer would ever doubt that parol evidence was competent to point out and identify the subject-matter which was purchased. The land in question was the Thomas tract, and the limits and extent of that tract could not be ascertained except by the aid of testimony extrinsic to the written contract. If one should sell, for instance, the Indian Queen Hotel, and the premises connected with it; of necessity, we should resort to parol evidence to learn what hotel was meant, and what was the extent

of the premises belonging to it.   And so we must al-
ways make inquiry for the thing which is described in
the contract of sale.   But it is an entirely different
question, when we seek to change the terms of the con-
tract, and to bind the parties by stipulations into which
they never entered.   The wood on the Thomas tract
was sold; therefore the extent of the tract must be
ascertained by appropriate evidence.   But there is no
recital, or covenant in the written contract, that the
eastern boundary of the tract was the old fence.   In
my judgment, it is absolutely clear that this stipula-
tion cannot be injected into the contract by parol evi-
dence.   The contract was under the seals of both
parties.   It has been always supposed that this mode
of contracting possessed in the eye of the law unusual
solemnity, and implied settled purpose and great de-
liberation.   We may ask what is the use of written
contracts, if the parties are bound to the performance
of obligations which are not contained in them.   Let
one draw his contract with the utmost caution, and
enumerate every stipulation by which he is willing to
be bound.   When impleaded in a Court of justice is he
no longer allowed to ask:   "Is it so nominated in the
bond?"   The doctrine quoted from Greenleaf in the
opinion delivered at the last term of this Court is not
impugned by any reputable authority whatsoever.
Without repeating that quotation, it is sufficient to say
that all conversations and declarations of the parties
are rejected in determining the intent and meaning of
a written contract.   The same learned author explains
the difference between this conservative doctrine and
the principle of admitting parol testimony to apply the
written instrument to its appropriate subject-matter.
He says:   "As it is a leading rule in regard to written
instruments, that they are to be interpreted according
to their subject-matter, it is obvious that parol or verbal

testimony must be resorted to, in order to ascertain the nature and qualities of the subject, to which the instrument refers. Evidence which is calculated to explain the subject of an instrument is essentially different in its character from evidence of verbal communications respecting it." 1 *Greenleaf's Evidence, sec.* 286. But the contract in this case is protected from interpolation not only by the common law, but also by the Statute of Frauds. According to *Smith vs. Bryan,* 5 *Md.,* 141, these trees are regarded as goods, and the sale of them was within the seventeenth section of the Statute of Frauds. Bryan, by written contract, had sold certain trees standing on his land to Smith; Smith having cut and removed some of them, by parol contract resold the residue to Bryan. This Court held that each contract was for the sale of goods; and was within the seventeenth section of the Statute. As Bryan was in possession of the land on which the trees were standing, at the time he repurchased them from Smith, it was further held that the delivery to him was as perfect as it could be made. The section of the Statute in question enacts that no contract for the sale of any goods, wares and merchandise for the price of ten pounds sterling, or upwards, shall be allowed to be good, unless there shall be delivery of part of the goods, or earnest given to bind the bargain, or part payment, or some note or memorandum in writing signed by the parties or their agents. In the present case there was neither delivery, earnest nor part payment. For surely no one will contend that the purchaser's own note was either earnest or payment. Certainly, *Glenn vs. Smith,* 2 *Gill & Johnson,* 493, ought to set such a question at rest in Maryland. The Statute then requiring this contract to be in writing, it must necessarily be wholly in writing. This is the uniform language of the authorities, and has been expressly declared by this Court. In *Lazear vs. Natl.*

*Union Bank of Md.*, 52 *Md.*, 119, 120, it is said: "Where parties have entered into a written agreement, it is only reasonable to suppose that they have introduced into the written instrument every reasonable and material term and circumstance; and, consequently, all parol testimony of conversations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected. 2 *Taylor's Ev.*, sec. 1035; 2 *Greenl. Ev.*, sec. 275; *McElderry vs. Shipley*, 2 *Md.*, 25. All oral negotiations or stipulations between the parties, preceding or accompanying the execution of a written instrument, are regarded as merged in it, and the written instrument is treated as the exclusive medium of ascertaining the agreement of the parties to it. *Bladen vs. Wells*, 30 *Md.*, 581. This rule should be more rigidly enforced in a case like the one now under consideration, where the Statute of Frauds requires the contract to be in writing to make it valid. Where that Statute requires the contract to be in writing, it cannot be partly in writing and partly in parol. *Frank vs. Miller*, 38 *Md.*, 460; *Moale vs. Buchanan*, 11 *Gill & J.*, 322." With respect to contracts mentioned in the seventeenth section, if they are not made according to its requirements, the language is, that they are not allowed to be good. They are invalid for any and every purpose. We held in *Baker Bros. & Co. vs. Lauterbach, Adm'x*, 68 *Md.*, 64, that a contract void by the Statute could not be made the ground of a defense, any more than of a demand. Standing then on these reasons and authorities, I maintain that the alleged parol contract stipulating that the old fence was the eastern boundary of the tract is utterly void for all purposes. We can draw no safe analogies for the decision of this case, from the practice of Courts of equity in refusing specific performance where there has been a mistake of material facts; or in *reforming writ-*

*ten instruments* where mistakes or omissions have occurred through fraud or accident; or in dealing with sales made by trustees of their own appointment, where the Court being really the vendor, and consulting its own sense of justice, releases a purchaser from inequitable terms contained in his contract.   The distinction is palpable and broad between all such proceedings, and those which come within the jurisdiction of a Court of law.

The question of fraud in making the statement that the old fence was the eastern boundary of the tract, was properly left to the jury in the first and fifth prayers of the plaintiff; and was improperly qualified by the prayer of the defendants.

After the best reflection which I have been able to give to the subject, I am still convinced that the opinion delivered at the last term was a correct exposition of the law.

(Filed 14th June, 1888.)

The following statement and opinion delivered by Judge. BRYAN speaking for the Court at the January Term, 1888, is inserted by his direction, as necessary to a full understanding of the foregoing dissenting opinion:

This is the second appeal in this case.   After it was remanded on the former appeal, judgment was entered for the defendants, and the plaintiff appealed.   At the trial the plaintiff offered in evidence a promissory note for three hundred dollars, dated February 22nd, 1886, made. by the defendants, and payable to the order of the plaintiff six months after date.   The defendants proved that the note was given in payment for the wood on a tract of land, which had been purchased from the plaintiff by the defendants, Gamble and Logan;

the defendant, Hammond, being merely the surety on the note; and then offered in evidence the contract by which the wood was purchased. This contract was under the hands and seals of the plaintiff, and Gamble and Logan. By it the plaintiff sold all the wood, with certain reservations and exceptions, which he had purchased from T. Snowden Thomas on a tract of land lying north of the east and west road, connecting the road from Bay — to North East, with that from Bay View to Charlestown, except a few acres on the west of the Bay View and Charlestown road adjoining the land of S. P. Maffitt. The defendants further proved that before the contract was signed Gamble and Logan went with the plaintiff several times to examine the tract, that they walked over the land and examined the wood, and that the plaintiff pointed out to Gamble and Logan the boundaries; that he told them that the eastern boundary between the Thomas tract and the land of J. L. McDaniel was marked by an old fence; that neither Gamble nor Logan knew where the boundaries of the Thomas tract were, and that relying on said representations of the plaintiff in regard to the eastern boundary of the Thomas tract, they signed the contract; that the true line of the eastern boundary of the tract was westward of the old fence, and that between this fence and the true eastern boundary there were about twelve acres; that they cut on these twelve acres about one hundred and one cords of wood, which they were obliged to leave there, and that McDaniel had sued them for the trespass. The defendants also proved that they had cut other wood on the tract, and sold some of it, and had made some of it into charcoal; that they had sold about nine thousand bushels of charcoal. It was also proved that a few days after the note in suit became due Gamble and Logan tendered to plaintiff one hundred and sixty dollars which he

refused to accept. The plaintiff then testified that prior to the contract with Gamble and Logan, he had been in negotiation with Thomas for the purchase of the chestnut rail and post timber; that he had no use for the cord-wood on the tract, but that Gamble and Logan told him that if he would buy all the wood on the tract they would buy from him all the cord wood for three hundred dollars, and that he could reserve the chestnut rail and post timber; that he knew nothing of the lines of the tract himself, but that Thomas, the owner, walked with him over said tract, and pointed out what he said were the boundaries; that he pointed out the old fence as the eastern boundary between himself and McDaniel; and that afterwards, he, the plaintiff, walked over the tract with Logan and Gamble, and told them, that Thomas told him, that the fence was the eastern boundary of the tract; that he did not profess to know anything about the lines himself, but merely repeated to Logan and Gamble what Thomas had told him, and told them that Thomas had so told him; that after he had walked over the tract with Logan and Gamble he bought the wood on the tract from Thomas by written contract. The tract is described in this contract in the same terms as those used in the contract with Logan and Gamble. Plaintiff further proved that he acted in perfect good faith in making the representations to Logan and Gamble in regard to the eastern boundary of the tract, and that he made them solely on Thomas' representations to him, as he told Logan and Gamble at the time. Defendants offered evidence by Thomas that he had never pointed out the old fence to the plaintiff as the boundary line.

The plaintiff offered five prayers, all of which were rejected by the Court, and the defendants offered one prayer which the Court granted. In this Court the plaintiff waived his second, third and fourth prayers.

His first and fifth prayers are as follows:

1. If the jury find that the plaintiff and defendants executed and delivered the within contract between them, dated the 26th of February, 1886, and that in pursuance of the stipulations therein contained, the defendants executed and delivered the promissory note sued on, and that said note has not been paid, then plaintiff is entitled to recover in this action; unless the jury further find that the defendants were induced to sign said contract of 26th February, 1886, by the fraud of the plaintiff.

5. If the jury believe that the plaintiff made certain representations to the defendants prior to the signing of the written contract of the 26th February, 1886, which has been offered in evidence in regard to the location of the divisional line between the lands of T. Snowden Thomas and J. L. McDaniel, which representations were in point of fact untrue, but that the plaintiff believed them to be true, and acted *bona fide* and honestly in making them, and because the owner of the said tracts, namely, T. Snowden Thomas, had told him prior to that time, that they were true, and he, the plaintiff, believed him, then such representations will be no bar to a recovery in this case, unless the jury further believe said representations were recklessly or negligently made.

The defendants' prayer is as follows:

If the jury believe from the evidence, that the defendants, Gamble and Logan, were induced to enter into the contract of the 26th of February, 1886, by the representation of the plaintiff, that he was the owner of the wood on the tract of land mentioned in the evidence, up to the fence laid down on the plat offered in evidence, and that but for such representation the defendants would not have entered into said contract; and if the jury further believe that the plaintiff was not

the owner of said wood beyond the red divisional line on the east, laid down on said plat, then the defendants are entitled to a deduction from the amount of the note offered in evidence, to the extent of the value of the wood on the portion of land between said fence and division line, and such reasonable expenses, if any, as the jury may find the defendants incurred in cutting the wood on said portion of land; provided the jury further find that said representation was made by the plaintiff either fraudulently or falsely in point of fact.

The red divisional line mentioned in defendants' prayer was the eastern boundary of the Thomas tract as shown by a plat made by a surveyor.

Plaintiff excepted to the ruling of the Court; and the verdict and judgment being against him, he appealed. .

A motion was made to dismiss this appeal. The verdict was rendered on the third day of February, 1887, and was regarded by the Circuit Court as a verdict for the plaintiff. Judgment was accordingly entered in his favor. As a matter of course the plaintiff could not be required to appeal from a judgment in his own favor. This Court reversed the judgment on a writ of error sued out by defendants, and decided that judgment should be entered for them. This judgment was accordingly entered on the fifth day of January, 1888, and the appeal was prayed by plaintiff on same day. Appeals are allowed in Courts of law from final judgments, and not from matters interlocutory. The plaintiff appeals from the final judgment against him on the very day of its rendition. The motion to dismiss the appeal must be overruled.

It must be considered as settled in this State "that where fraud has occurred in obtaining, or in the performance of contracts, or where there has been a

Sentman *vs.* Gamble, *et al.*

failure of consideration, total or partial, or a breach of warranty, fraudulent or otherwise, all or any of these facts may be relied on in defence by a party when sued upon such contracts, and that he shall not be driven to assert them either for protection, or as a ground for compensation in a cross action." We have quoted the language of the Court in *Groff vs. Hansel,* 33 *Md.,* 161. In the same case, it was held that all these defences might be made in actions on promissory notes between the original parties. These defences are allowed in order that circuity of action may be avoided. The ground of objection to the plaintiff's recovery is the averment, that the tract of land contains twelve acres less than he represented it to contain, when he sold the cord wood on it to two of the defendants. Let us first look at the contract of sale. It does not mention the boundaries of the tract, nor does it make any statement of the number of acres, nor make any reference to either of these subjects, nor can the conversation between the parties previously to the time when it was executed have the effect of varying in any particular the written contract. The writing, and nothing else, must stand as the authentic memorial of the contract of the parties. This rule has been universally recognized by the highest authorities known to the law. Greenleaf lays it down in very emphatic terms: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many

instances to substitnte a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 *Greenleaf's Evidence, section* 275. As there was no contract making any stipulations about the number of acres contained in the tract of land, or about its boundaries, no breach of contract is shown, or can be shown by evidence on these points. But nevertheless the conversations between the parties previously to the contract are of importance for another purpose in the cause. If the representations are shown to be of such a character as to maintain an action against the plaintiff, the defendants may rely on them by way of defence. The nature of the representations which will sustain an action ought not to be the subject of doubt. On this question the Courts have for a long time accepted very fully, and with great unanimity the doctrines declared in the leading case of *Pasley vs. Freeman.* A quotation from the Supreme Court of the United States will be sufficient for the present purpose: "The gist of the action is fraud in the defendants, and damage to the plaintiff. Fraud means an intention to deceive. If there was no such intention; if the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue. Since the decision in *Haycroft vs. Creasy,* 2 *East,* made in 1801, the question has been settled to this effect in England. The Supreme Court of New York held likewise in *Young vs. Covell,* 8 *Johns.,* 23. That Court declared it to be well settled, that this action could not be sustained, without proving actual fraud in the defendant, or an intention to deceive the plaintiff by false representations. The simple fact of making representations which turn out not to be true, unconnected with a fraudulent design,

is not sufficient. This decision was made forty years ago and stands uncontradicted, so far as we know, in the American Courts." *Lord vs. Goddard,* 13 *Howard,* 211. The same views have been expressed by this Court in *McAleer vs. Horsey,* 35 *Md.,* 439, *and Buschman vs. Codd,* 52 *Md.,* 202. It follows then that unless the representations made by the plaintiff were both false and fraudulent, they would not furnish matter of defence to this action. The first and fifth prayers of the plaintiff ought to have been granted, and the defendants' prayer should have been refused.

We have laid out of our view the class of cases, which show the circumstances under which a contract may.be rescinded for misrepresentations honestly made with a full belief in their truth; because where a contract is rescinded there must be *restitutio in integrum;* the state of things which existed before the contract must be.restored. In the present case the defendants have held on to the contract, and accepted the full benefit of it, as far as they could, and have not made any restitution to the plaintiff. Where a party has not, by his conduct affirmed a contract he may rescind it if he can show that he entered into it on the faith of a false representation, made by the other party touching the essence of the contract, whether the misrepresentation were the result of fraud or mistake. *Doggett vs. Emerson,* 3 *Story,* 700. The same doctrine as to the effect of a misrepresentation was held in *Joice vs. Taylor,* 6 *Gill and Johnson,* 54.