ROSE WALD *v.* ABRAHAM WALD.
[No. 5, October Term, 1931.]

494

*Decided October 29th, 1931.*

*Decision modified February 12th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Eldridge Hood Young* and *Robert L. Mainen,* with whom were *Young, Crothers & Settle* on the brief, for the appellant.

*R. Lewis Bainder,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Abraham Wald and Rose Wald were married in Poland in 1911, and he emigrated to United States in 1914. His wife and daughter Esther remained in Poland, and he saved, and in 1919 sent his wife a ticket and money to rejoin him, which she and their daughter did in August or September of 1920, and a second daughter, Jeanette, was born as a result

of their reunion. The couple separated in June, 1921, and have not since cohabited. On April 20th, 1929, the husband filed his bill for an absolute divorce on the ground of desertion, and the following month the wife answered and denied the material allegations. On October 4th, 1930, she filed a cross-bill for permanent alimony on grounds that would have entitled her to an absolute divorce. After the husband had filed his answer denying the wife's charges of desertion and adultery, testimony was taken before the chancellor, who dismissed the wife's cross-bill, and awarded the husband an absolute divorce, and the guardianship and custody of the infant daughter to the mother, and charged the husband with the support and maintenance of the infant to the extent of ten dollars a week, until the infant should become of age or self-supporting. The wife took an appeal from this decree.

At the time of the institution of his suit, the elder daughter was married, and her mother and infant sister lived with her, and Wald was involuntarily paying, pursuant to a judgment of the Criminal Court of Baltimore City, the sum of fifteen dollars a week to his wife for her support and that of the younger child. He had been compelled, by criminal prosecution, to pay, first, the sum of $12.75 to his wife during 1922, and then fifteen dollars a week for the remainder of the period of the separation of himself and his wife.

Before his wife came from Poland, Wald, who is an expert baker, had formed a partnership with David Kermisch, and they lived and carried on their bakery in a large building in the 1200 block of East Lombard Street in Baltimore, where their affairs were prospering. The business was conducted on the first floor, and Wald and his wife had their apartment of five rooms on the third floor; and Kermisch and his wife, with their four children, were located on the second floor. Wald informed his wife that she would have to stand in the shop, but she objected. The husband asserted her objection was to the partnership, because she wished no one to be associated in the business except her own family, whom

she suggested should be brought from Poland. On the other hand, while the wife admitted that she desired her family to be substituted in the business, she testified that her primary objection was her husband's apparent intimacy with Mrs. Kermisch, who she asserted was his mistress. Whatever the cause, about a month after his wife's arrival, Wald removed his family to two rooms in a residence at the corner of Pratt and Ann Streets, but continued in business until it failed because, he maintains, of his wife's meddlesome interference and behavior which alienated the customers.

When the bakery enterprise was closed out at the end of May, 1921, Wald had fifty or sixty dollars left, which he affirms he divided with his wife and went to New York to search for work. While there he wrote to his wife and sent her five dollars, and not finding employment, he returned home after several weeks' absence. According to his testimony, he went immediately to the rooms where he and his wife had their home, left his suitcase, and went out, as his wife and daughter were not there; met a friend, Charles Roffeld, and they returned and found his wife, who greeted him with opprobrious names, and informed him that she had made her living in the old country and could make it in this without him; that she did not need him any more, and, finally, ordered him away; and that he left in order to avoid fighting. In this narrative, Wald is partly confirmed by Roffeld, who left a few minutes before Wald, and did not understand from what he had heard that Wald's wife had refused to let Wald stay in their home. There is no testimony from which it could be inferred that the wife contemplated physical violence. At the most the scene described was one in which an angry, vituperative, shrewish wife held the stage, but this occasion afforded the husband no justification in law to abandon his home and desert his pregnant wife and a daughter, who was about eight years old. In such circumstances, a husband should have recourse to "tricks * * * to tame a shrew, and charm her chattering tongue." *Shakespeare's Taming of the Shrew*, IV, 2, 58. The law is tolerant of this common termagancy to the extent of not

regarding it as of itself sufficient to be a cause of separation. It follows that, even if the version of the husband were held to be established, the behavior of the wife could not be considered a constructive abandonment and desertion by the wife, who was ever anxious for a reconciliation. *Bounds v. Bounds,* 135 Md. 220, 108 A. 870; *Twigg v. Twigg,* 107 Md. 676, 69 A. 517; *Wheeler v. Wheeler,* 101 Md. 427, 61 A. 216; *Harding v. Harding,* 22 Md. 337; *McKane v. McKane,* 152 Md. 515, 137 A. 288; *Hillwood v. Hillwood,* 159 Md. 167, 150 A. 286; *Schwartz v. Schwartz,* 158 Md. 90, 148 A. 259.

The husband, the titular head of the house, stated that he walked out to avoid a fight, although there is nothing to show a blow struck or threatened, but he never returned to test his wife's recalcitrance, nor sought a reconciliation, nor made any advance toward a renewal of their cohabitation, although he knew she was bearing his child in June, 1921, and gave birth to it in December. By his own account he was not without fault in so complacently acquiescing in his dismissal. The wife, however, contradicted the husband's testimony with reference to the cause of the separation. She testified that he left for New York without giving her any money, and that, when he came back, he went to the home of the Kermisches, and that he never did return to her, although she has persistently importuned him to resume their relations and restore their home. The mother is corroborated by the older daughter, who was then a child, and their testimony, if believed, would convict the father of abandonment and desertion in June, 1921, and entitle the wife to an absolute divorce, since there is no controversy that the spouses have been continuously separated, without marital intercourse, since June, 1921, and that the abandonment is deliberate and final and the separation beyond any reasonable expectation of reconciliation. Code, art. 16, sec. 38.

If other persuasive circumstances be ignored, there is one independent, decisive, and undisputed corroborative fact which is convincing proof of the guilt of the husband. After their separation in June, 1921, the wife did not submit to

the situation, but shortly charged her husband with non-support and desertion. It is true that sections 87-89 of article 27 of the Code create two separate and distinct offenses, one of desertion and the other of non-support, as where, first, the husband abandons his wife and lives elsewhere, or, secondly, the husband continues to reside in the same domicile but fails to provide for her support and maintenance. Desertion, however, may include the offense of non-support, but the offense of non-support may exist without desertion within the meaning of the statute. *Pritchett v. State*, 140 Md. 310, 314, 117 A. 763. So evidence of conviction under these sections is ambiguous, unless the proof disclose the nature of the prosecution. While the testimony was in parol, no objection to its introduction was made in this contested cause; and the testimony must be given its effect, which is clearly that the husband was prosecuted for the desertion, accompanied by non-support, of the wife. The burden of proving this desertion was upon the State, as it was on the several subsequent occasions when, with his wife as prosecuting witness, he was re-arrested at her instance for desertion. *Sentman v. Gamble*, 69 Md. 293, 13 A. 58, 14 A. 673; *Bowersox v. Bowersox*, 157 Md. 476, 480, 146 A. 266; *Wigmore on Evidence* (2d Ed.), sec. 1270. As the result of these successive prosecutions, where the issue was an abandonment of the wife, sentences were imposed which have compelled the accused and convicted husband constantly to pay to his wife a specified monthly amount from 1922 to the bringing of his suit for divorce in 1929, when he was paying fifteen dollars every week for the support of his wife and infant daughter pursuant to a judgment of the Criminal Court of Baltimore City. Under the circumstances, these repeated judgments are convincing evidence of the husband's wrongful abandonment of the wife. *Commonwealth v. James*, 9 Pa. Co. Ct. R. 145, 146; *Grimm v. Grimm*, 8 Pa. Dist. & Co. Rep. 484, 485; *Weymers v. Weymers*, 81 Pa. Super. Ct. 432, 435, 436; *Bauder's Appeal*, 115 Pa. 480, 10 A. 41; *In re Phillips' Estate*, 271 Pa. 129, 132, 114 A. 375; *Hahn*

*v. Bealor,* 132 Pa. 242, 19 A. 74; *Young v. Young* (N. J. Ch.), 126 A. 467; *Fisher v. Fisher,* 95 Md. 320, 52 A. 898.

When to these convictions are added the proof that the husband, although able to do so, made no voluntary provision for his wife, nor supplied any common dwelling or home to which she could repair, but has continued his friendship with the family whose mistress was the immediate occasion of the separation of his wife and himself in 1921, and, since its purchase in 1923, had rented to this family his house, where he has lived with them as their familiar boarder, and that the husband has never had any disposition nor made any endeavor to renew his marital relation, but has consistently repulsed every effort by his wife for reconciliation, and declared his firm purpose never to live with her, the effect is so convincing that the court is constrained to conclude that the wife's version of the separation is true and adequately corroborated. In our opinion, therefore, the bill of complaint of the husband should have been dismissed, and a decree should have been passed awarding the wife an absolute divorce from her husband on the ground of abandonment for the statutory period, the custody and guardianship of the infant child, and permanent alimony and maintenance in the accustomed sum of fifteen dollars a week, subject to the further order of the chancellor, for the support and maintenance of the wife and the infant daughter. *Bounds v. Bounds,* 135 Md. 220, 225, 108 A. 870; *Downs v. Downs,* 154 Md. 430, 140 A. 831; *Schwartz v. Schwartz,* 158 Md. 80, 148 A. 259; *Heinmuller v. Heinmuller,* 133 Md. 495, 496, 105 A. 745.

The allowance of the fee to the wife's counsel by the decree is fair and unobjectionable.

The views of the court will require the decree from which the appeal is taken to be reversed, except with respect to the allowance of counsel fees and the imposition of costs.

> *Decree reversed in part and affirmed in part, and cause remanded for a decree in conformity with this opinion, the costs to be paid by the appellee.*

500

On motion to modify:

The wife has filed a motion for a revision of the decision to the extent that it awards an absolute divorce to the wife, where the relief desired by her was limited to temporary and permanent alimony, the custody and maintenance of the infant, and counsel fees.

The proceedings in equity were begun by the husband, whose bill of complaint sought to obtain an absolute divorce on the ground of abandonment. The wife first answered and then later filed in the pending equity suit of her husband a cross-bill, in which she accused her husband of adultery and abandonment and prayed specifically that she be awarded: (a) The care and custody of their infant; (b) an allowance for the support of herself and infant; and for counsel fees and costs, and (c) such other and further relief as her case may require.

While alimony is usually an incident of a decree for divorce, it may be obtained by an original proceeding wherein the wife alleges and proves the facts and circumstances which would entitle her to a decree for divorce. If her prayer for relief specifies alimony as the object of her suit, and does not mention divorce as an object desired, her bill of complaint is generally accepted as one for alimony only, although the prayer may conclude with a request for general relief. McCaddin v. McCaddin, 116 Md. 567, 568, 82 A. 554; Wendel v. Wendel, 154 Md. 12, 139 A. 573; Code, art. 16, secs. 14, 15.

In the cause at bar, the wife filed a cross-bill in the pending equity suit of husband. Her proceedings, therefore, were not an original suit, but an auxiliary suit, and so, a dependency of the husband's bill of complaint. Consequently, while the defendant's cross-bill may raise other issues, and set up additional facts not alleged in the original bill, when the facts or issues constitute part of the same defense and relate to the same subject-matter, the cross-bill "is generally considered as a defense, or as a proceeding to procure a complete determination of a matter already in litigation in the court, and, therefore, the plaintiff is not, at least as against the plaintiff in

the original bill, obliged to show any ground of equity to support the jurisdiction of the court. *Adams, Eq.,* side page 405; *Story, Eq. Pl.,* sec. 399; *Milford, Eq. Pl.* (by Jeremy), 80-83." *Hooper v. Central Trust Co.,* 81 Md. 559, 576, 32 A. 505, 508. See *Miller's Eq. Proc.,* secs. 191, 192; *Wilmer v. Phila. & Reading C. & I. Co.,* 124 Md. 599, 611, 93 A. 157; *Brooks v. Sprague,* 157 Md. 160, 164, 165, 145 A. 375.

The cross-bill of complaint, therefore, accepted the question of a right to a divorce as the primary issue, but interposed the defense that the wife and not the husband was entitled to an absolute decree of divorce, with alimony and the custody and guardianship of the infant and the latter's maintenance, as related but subsidiary issues. 2 *Daniells' Chancery Pl. & Pr.* (6th Am. Ed.), 1548-1553; *Bartol's Chancery Practice,* pp. 72-74; *Alexander's Ch. Pr.* (1839), 111; *Simmont v. Simmont,* 160 Md. 422, 433, 153 A. 665; Code, art. 16, sec. 39.

In the appeals of *Chappell v. Chappell,* 86 Md. 532, 39 A. 984, 989, the husband filed a bill of complaint against his wife to obtain a divorce *a vinculo matrimonii,* and the wife answered and filed a cross-bill wherein she prayed for a divorce *a mensa et thoro* and alimony. In commenting on the pleadings, this court pertinently said: "The bill of complaint does not, nor could it, pray for alimony, because it was filed by the husband against the wife. The recovery of alimony was no part of the relief prayed for. * * * The application for alimony and counsel fees grew out of the original proceeding, but were not the things sought to be recovered by it. They were purely incidental and auxiliary." Omitting a few lines, the court thus continued: "A cross-bill is generally considered as a defense, or as a proceeding to procure a complete determination of the matter already in litigation in the court. *Hooper v. Cent. Trust Co.,* 81 Md. 576, 32 A. 505; *Story, Eq. Pl.,* sec. 399. It is not a new suit. *Cross v. DelValle,* 68 U. S. (1 Wall.), 5, (17 L. Ed. 515); *Pierce v. Chace,* 108 Mass. 260." Pages 544, 545 of 86 Md., 39 A. 984, 989.

A complete determination of the matters in litigation would embrace, not only the primary question of divorce, but also the secondary ones of alimony, and of the custody, guardianship, and maintenance of the infant. *Simmont v. Simmont,* 160 Md. 433, 153 A. 665; Code, art. 16, sec. 39. If well founded, the allegations of the cross-bill of complaint were sufficient not only to bar the husband but also to entitle the wife to an absolute divorce on the ground of either adultery or abandonment; and, if either matrimonial offense were established, a decree of an absolute divorce, with alimony, was within the prayer for general relief. The rule is thus given: "Under the prayer for general relief the court is not confined to that which may be specially asked or suggested, orally or otherwise; but may adapt the relief exactly to the nature of the case stated in the bill." The limitation upon this rule is that the relief granted under the general prayer must be agreeable to and consistent with the case made by the averments of the bill and the specific relief asked. *Miller's Equity,* sec. 100, pp. 128, 129, sec. 262; *Daniell Ch. Prac.* 377-389; *Story's Equity Pl.,* sec. 40-43; *Townshend v. Duncan,* 2 Bland, 45, 48-49; *Sloan v. Safe Deposit & Trust Co.,* 73 Md. 239, 245, 20 A. 922; *Riverside Brick Co. v. Wheatley,* 92 Md. 410, 412, 48 A. 715; *Benscotter v. Green,* 60 Md. 327, 333; *Dunnock v. Dunnock,* 3 Md. Ch. 140, 142; *Hitch v. Davis,* 3 Md. Ch. 266, 275.

In awarding to the wife an absolute divorce as well as alimony and the custody, guardianship, and maintenance of the infant, a complete and consistent adjudication was made of the matters in litigation, but the pending motion of the wife shows that a mistake was made in the inference that the wife desired a divorce. Since an early date, the wife, although entitled to a divorce, may, in this jurisdiction, elect to proceed against the husband for alimony only, and thus she has the choice between a sum for divorce with alimony or for alimony without divorce. She may make this choice either when she begins her suit (*a*), or during the course of the litigation (*b*), or, under proper circumstances, after an adjudication and remand on an appeal (*c*). *Downs v. Downs,*

154 Md. 430, 437, 140 A. 831; (*b*) *Polley v. Polley,* 128 Md. 60, 62, 97 A. 526; (*a*) *McCaddin v. McCaddin,* 116 Md. 567, 568, 82 A. 554; *Outlaw v. Outlaw,* 118 Md. 498, 84 A. 383; *Miller v. Miller,* 159 Md. 204, 150 A. 451; *Wendel v. Wendel,* 154 Md. 12, 139 A. 573; *Wallingsford v. Wallingsford,* 6 Har. & J. 485; *Dunnock v. Dunnock,* 3 Md. Ch. 140, 143, 144 (reasons for rule stated); *Helms v. Franciscus,* 2 Bland, 544, 568, 569, and see *Scott's* case *and Govane's* case, in footnotes.

It follows that, on the remand of this case, the decree to be passed by the chancellor will not provide for the absolute divorce of the wife from the husband, unless she shall so express a desire before the passage of the decree. *Downs v. Downs,* 154 Md. 430, 140 A. 831.

> *Decree reversed in part and affirmed in part, and cause remanded for a decree in conformity with the original opinion as modified by this supplementary opinion.*