HELEN K. STAUB *v.* WILLIAM H. STAUB.
[No. 35, January Term, 1936.]

*Decided February 20th, 1936.*

The cause was argued before BOND, C. J., URNER, PARKE, SLOAN. MITCHELL, SHEHAN, and JOHNSON, JJ.

*Willis R. Jones,* for the appellant.

*J. Stanislaus Cook* and *John Y. Offutt,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

On July 1st, 1933, Helen K. Elphinstone and William H. Staub were married and subsequently resided in Baltimore, Maryland, until November 28th of the same year, when they separated. Between that date and March 19th, 1934, the wife established a residence in Crittendon County, Arkansas, since, on the date last mentioned, she obtained in the chancery court of that county and state, upon the ground of cruelty, an absolute divorce from her husband after the court had acquired jurisdiction to entertain the suit by virtue of an order of publication against him. In the decree divorcing her from him, she was permitted to resume her maiden name. From a consideration of the record we are not informed as to her present residence. However, on November 1st, 1935, she filed in the Circuit Court of Baltimore City a bill of complaint against him, in which, in addition to reciting the substance of what has above been stated, she further alleged that the defendant at the time of her marriage to him was impotent and remained in that condition at all times during the period of her residence with him; that, although duly warned of her suit by publication, he failed to appear in said proceedings, in consequence of which that court was without authority to award alimony to her, although since her marriage he had been regularly employed at a good salary, and she was advised that he owned valuable real estate in the State of Maryland, while she was without adequate income to support and maintain herself, and was then in an impaired state of health and unable to obtain gainful employment; and at all times since her marriage to him, she had behaved herself as a dutiful and chaste wife. In the bill of complaint were prayers (a) for permanent alimony; (b) for alimony *pendente lite;* and (c) for general relief. The defendant demurred to the bill, and from an order of the

chancellor sustaining the demurrer, the former wife takes this appeal. It should here be emphasized that the validity of the foreign divorce has at no time been questioned by either of the parties hereto.

The question presented is whether an allowance, either of permanent alimony or of alimony *pendente lite,* can be made to the former wife, who voluntarily obtained a decree of divorce from the husband in a foreign jurisdiction, such decree being silent as to alimony.

We are not unmindful of a lack of uniformity in the decisions of other jurisdictions upon the question of law thus presented. For instance, in *Woods v. Waddle,* 44 Ohio St. 449, 8 N. E. 297, the wife moved to Tennessee and there obtained an absolute divorce upon service by publication. Later her right to maintain a suit for alimony alone in the courts of Ohio was upheld. Likewise the Supreme Court of Washington, in the case of *Adams v. Abbott,* 21 Wash. 29, 56 P. 931, recognized the right of the former wife to maintain an action for alimony in the State of Washington after she had obtained a decree of absolute divorce in Wyoming, and apparently the decision in *Turner v. Turner,* 44 Ala. 437, upholds a similar view of the law. It seems that the decisions in these cases permitted a recovery by the wife upon the ground that in the foreign jurisdiction where the divorce was obtained the matter of alimony was not litigated. However, in many other jurisdictions the right of the former wife to maintain a suit for alimony against the former husband in the state of his domicile, in cases where a foreign divorce had been obtained by him, as well in cases in which the divorce had been obtained by her, was denied. Thus in *Eldred v. Eldred,* 62 Neb. 613, 87 N. W. 340, 341, the parties were married in Iowa, the husband subsequently moving to Nebraska. His wife obtained an absolute divorce in Illinois and later returned to Nebraska and sued him for alimony. Her right to relief was denied, the court in its opinion saying: "The marriage relation that existed between the present plaintiff and defendant has been dissolved by a court of plain-

tiff's own selection. They are no longer husband and wife. The duty and obligation that once existed to support and maintain the plaintiff does not now rest upon the defendant. He is no longer her husband, and no legal obligation is imposed upon him to provide for her maintenance; hence there exists no right to alimony."

In *Doeksen v. Doeksen*, 202 Iowa, 489, 210 N. W. 545, 546, the court in sustaining this view carried the doctrine farther than in any other case observed by us, in that the foreign decree of divorce contained a provision that the case was "continued on the question of alimony." This was subsequently allowed in the state of the domicile of the former husband; the latter appealing and the decision being reversed. The court said: "The appellee was not obliged to take a decree in the divorce action on service in a foreign state; but she saw fit to take a decree of divorce in an action where the court had no jurisdiction to make an award of alimony. By so doing she accepted a final decree of divorce without alimony, and cannot now maintain this action."

*McCoy v. McCoy*, 191 Iowa, 973, 183 N. W. 377, 378, is a case in some respects strikingly analogous to the one here under consideration. The parties were married in Iowa and later moved to Arkansas, where the wife secured an absolute divorce from the husband for desertion; service being by publication only, and the decree being silent as to alimony. Later in Iowa she sued her former husband for permanent alimony. The demurrer to her bill was sustained. It was contended that the suit was maintainable in Iowa because the wife could not obtain alimony in Arkansas, since the court of that state never acquired jurisdiction *in personam* over her husband, and the question of alimony was therefore never adjudicated, and she was therefore entitled to have it decided wherever she could obtain jurisdiction over him. This view was rejected by the appellate court, and the action of the chancellor in sustaining the demurrer was upheld. From that decision we quote:

"The general ground upon which these holdings are

based was that alimony is an incident of the marriage relation; that it can only be allowed where the marriage relation exists; that it may be allowed as a part of the decree of divorce; that the severance of the marriage relation by absolute decree without alimony terminates the right to alimony. * * *

"As already indicated, it is urged for the plaintiff that the Arkansas court was without jurisdiction to award alimony, and that for that reason the question of alimony should be deemed as not adjudicated. But the plaintiff voluntarily asked for and obtained from such court a final adjudication which of necessity adjudicated the full relief to which she was entitled and thereby terminated her right to further adjudication or relief. The decree became binding upon the defendant. It was equally binding upon the plaintiff."

Similar views upon the law have been announced in many other jurisdictions. *Darby v. Darby* (1925) 152 Tenn. 287, 277 S. W. 894; *Hazard v. Hazard* (1916) 197 Ill. App. 612; *Hall v. Hall* (1914) 141 Ga. 361, 80 S. E. 992; *Joyner v. Joyner*, 131 Ga. 217, 62 S. E. 182; *Kutchai v. Kutchai*, 233 Mich. 569, 207 N. W. 818; *McFarlane v. McFarlane*, 43 Or. 477, 73 P. 203, 75 P. 139; *Howell v. Howell*, 104 Cal. 45, 37 P. 770; *Herbert v. Herbert*, 221 Mo. App. 201, 299 S. W. 840; *Watson v. Watson*, 168 Ga. 573, 148 S. E. 386; *Long v. Long*, 39 Ariz. 271, 5 P. (2nd) 1047; *Frohoch v. Frohoch*, 117 Fla. 603, 158 So. 106; 42 *A. L. R.*, Annotation beginning on page 1385.

In *Browne on Divorce*, page 287, title "Alimony," it is stated: "In England, the usual rule was to apply for permanent alimony after the finding in the divorce suit, at which later date the sentences for divorce and alimony would be consolidated into one. The tendency in America is to hold an application too late where alimony is applied for after the court has decided the divorce action." In support of that proposition, the author cites *Johnson v. Johnson*, 65 How. Prac. (N. Y.) 517 (1883). In that case, plaintiff made a motion to amend the decree of divorce, asserting as a reason for same her husband's

promise to pay her money from time to time, should she make no claim therefor in the divorce action. The court denied the motion, saying: "The plaintiff refrained from taking a decree providing for her support, on the promise of the defendant to pay her money from time to time. If she were content to take such a promise instead of a decree of the court, she must be content now. No charge of fraud can be based on a mere promise, and the judgment cannot be disturbed on that ground. With the entry of judgment in an action of divorce dissolving the marriage contract the jurisdiction of the court over the parties is terminated, except to enforce the judgment or correct mistakes *(Kamp v. Kamp,* 59 N. Y. 212)."

See, also, 2 *Schouler, Marriage, Divorce and Separation,* p. 2012, where it is stated: "A decree of a foreign court giving the husband a divorce is usually a bar to an action by the wife for alimony, and the omission of alimony in a foreign decree for divorce is usually a final decree on the subject, and is a bar to an attempt to obtain alimony in another state. But where a wife obtains a decree of divorce on substituted service, the husband not personally appearing, and the decree reserves the question of alimony for subsequent consideration by any court having jurisdiction, the wife may afterwards institute suit in another jurisdiction where the husband resides and has property and have her alimony determined."

Since the precise point presented has never been definitely decided in this state, it seems not out of place to review the origin and growth of the doctrine of alimony in Maryland, as embodied both in legislative enactments and judicial decisions, for the purpose of ascertaining the policy of the state in reference to the subject, and viewing the principles announced thereunder in their proper relation to the question of law under consideration.

In this state, alimony has not been defined by statute; hence its definition must be sought from the adjudicated cases and texts. Alimony is regarded as maintenance afforded the wife out of the income of the husband where

the latter refuses to give it, or where from his improper conduct he compels her to separate from him. The provision continues for the wife during their joint lives or so long as they remain separate. *Wallingsford v. Wallingsford,* 6 H. & J. 485, 489; *McCaddin v. McCaddin,* 116 Md. 567, 572, 82 A. 554; *Outlaw v. Outlaw,* 118 Md. 498, 502, 84 A. 383; *Emerson v. Emerson,* 120 Md. 584, 589, 87 A. 1033; *Polley v. Polley,* 128 Md. 60, 63, 97 A. 526; *Bishop on Marriage, Divorce and Separation,* vol. 1, p. 576; *Schouler on Marriage, Divorce and Separation,* vol. 2, pp. 1936, 1937.

Power to award alimony was first conferred upon courts of equity in this state by statute passed in 1777 (now section 14 of article 16 of the Code), and for some time thereafter it was awarded by the ecclesiastical courts of England and our equity courts as incidental to a divorce *a mensa,* but this jurisdiction was enlarged by chapter 262, Acts of 1841 (now section 37 of article 16 of the Code, Supp. 1935), as a result of which equity courts in the state were given jurisdiction over both kinds of divorces, and by the same act (now section 15 of the same article) were authorized to award alimony in cases where a divorce absolute was decreed. In addition to awarding alimony in connection with the two classes of divorce, they may also award it to a wife upon allegation and proof of facts sufficient in themselves to support a decree either *a mensa* or *a vinculo. Outlaw v. Outlaw,* 118 Md. 498, 502, 84 A. 383; *Polley v. Polley,* 128 Md. 60, 63, 97, A. 526; *Hood v. Hood,* 138 Md. 355, 361, 113 A. 895.

From a consideration of these cases it appears that alimony has always been allowed in Maryland as an incident of the marriage, the right thereto being entirely dependent upon the status of the parties, for, as said in *Keerl v. Keerl,* 34 Md. 21, 26: "It is an incident of the marriage and is a right entirely depending upon the status of the parties, and each state has the right to determine the status and condition of those who are domiciled within its limits."

This view is a familiar one in Maryland, for Judge Harlan, in his work on *Domestic Relations,* pt. 1, p. 5,

refers to such status as follows: "Marriage is a status. The contract to marry having been performed by marriage, a status, not a contract, results. The parties have entered one of the domestic relations, deriving from a source higher than any contract of which the parties are capable both its rights and duties; these being uncontrolled by any contract parties can make. Relation no more a contract than 'fatherhood' or 'sonship.'" See, also, *Schouler on Marriage, Divorce and Separation*, vol. 1, p. 17, vol. 2, p. 1346; *Bishop on Marriage, Divorce and Separation*, p. 4.

In *Tabeling v. Tabeling*, 157 Md. 429, 437, 146 A. 389, 392, a husband had secured a decree of divorce from his wife upon the charge of adultery. Her defense to that charge was that the husband had connived at and helped bring about such adultery. Subsequently the former wife filed a petition upon the grounds last stated to set aside the decree. After hearing, the decree was annulled by the chancellor and the former husband was required to pay the petitioner alimony *pendente lite* and certain counsel fees. This order was reversed on appeal to this court, and, in respect to that part of it allowing her temporary alimony and counsel fees, it was said: "The chancellor, in the decree of September 11th, 1928, allowed the appellee, and ordered the appellant to pay to her, counsel fees of $500, and this also should be reversed. When the petition of May 28th, 1928, was filed the appellee was not the wife of the appellant, and as alimony *pendente lite* and counsel fees are allowable only to a wife, because of the relationship of husband and wife, one who is not a wife is not entitled to such allowances. 19 *C. J.* 228; *Corder v. Speake*, 37 Or. 105, 51 P. 647; *Wilson v. Wilson*, 40 Iowa, 544; *Lake v. Lake*, 194 N. Y. 179, 87 N. E. 87; *Carter v. Carter*, 156 Md. 500, 144 A. 490, 493. If the petition of the appellee had succeeded, our decision would have been otherwise, as it would then have been allowable on the theory that the decree of divorce had been void and that notwithstanding it had been passed, the appellant and appellee were still husband and wife."

In *Marshall v. Marshall,* 162 Md. 116, 159 A. 260, 262, the wife secured an absolute divorce from the husband, and, although in her bill of complaint alimony was sought, the decree was silent in this respect, nor did it contain any reservation of authority to consider and pass upon alimony in the future. The former wife later filed with the court a petition praying for modification of the decree providing for alimony to her from the former husband. The relief was denied by the chancellor, and, upon appeal to this court, his position was upheld. In that opinion Judge Pattison, after quoting from *Emerson v. Emerson, supra,* to the effect that jurisdiction remained in equity courts to modify that part of a decree providing for alimony, regardless of whether a divorce *a vinculo* or *a mensa* had been granted, used this pertinent language:

"But is this rule to be applied in cases of divorce *a vinculo* where there is no provision made for the payment of alimony?

"There is, we think, a very material difference in the two classes of cases, a difference which justifies a different conclusion as to the application of the rule. In the first class, the court, in the passage of the decree, has not exhausted its jurisdiction, inasmuch as it retains a continuing jurisdiction as to the enforcement of the payment of alimony so long as it is payable. In the second class of cases, where the decree grants an absolute divorce, with no reservation of power in respect to the allowance of alimony thereafter, not only are the marriage ties completely severed, but the man is relieved of the obligation of a husband to support his wife. In that case, the jurisdiction of the court is fully exhausted, there being nothing further for the court to do in the exercise of its jurisdiction in relation to the subject matter of the decree; while in the former class of cases, the marriage ties are not completely severed, the parties remain man and wife, and the obligation is still upon the husband to support his wife. In one class of cases there is a continuing jurisdiction, while in the other there is not.

"In our opinion the rule above stated does not apply

to this case, where the decree granted an absolute divorce without allowing alimony, and without reserving therein any power in the court to pass thereafter upon the subject of alimony. In this conclusion there is nothing inconsistent with the views expressed by the court in *Clarke v. Clarke, supra* [149 Md. 590, 131 A. 821], for in that case, under the decree therein passed, the parties were still man and wife after the passage of the decree, and it was still within the jurisdiction of the court to deal with the subject of alimony, in lieu of the support and maintenance of the wife by her husband."

He then quoted with approval from *Spain v. Spain*, 177 Iowa, 249, 158 N. W. 529, as follows: "At common law and under ecclesiastical procedure courts did entertain such an action as this, but this was because there was no such thing as an absolute divorce known to either law. The divorce was from bed and board, and was little more than a legalized separation. The duty of the divorced husband to support his wife continued after the divorce was granted, and these courts recognized the right to enforce this obligation by changing the original decree or order to meet new conditions, so that, if the divorced husband thereafter acquired property in any manner, even through inheritance, the court opened up the matter of alimony and modified its original order to meet the new conditions. In such proceedings both the needs of the former wife and the ability of the former husband were considered on application to modify the decree. *O'Hagan v. O'Hagan's Excr.*, 4 Iowa, 509; *DeBlaquire v. DeBlaquire*, 3 Hagg. Ecc. 322; *Lockridge v. Lockridge*, 2 B. Mon. (Ky.) 258; *Rees v. Rees*, 3 Phillim. 387; *Poynter, Marriage & Divorce* [1836] 255. In this country * * * a divorce absolutely dissolves the marriage status, and the duty of support no longer exists. Alimony is allowed in such cases in lieu of * * * refusing, denying, or failure to award it, save for such fraud or mistake as would authorize the setting aside or modification of any decree."

Being, then, of the opinion that in this state alimony is allowable only as an incident to the status of marriage,

no reason suggests itself as to how it can be allowed in this case, the status having been destroyed by the voluntary act of the plaintiff in securing a decree of divorce, silent upon the subject, in the Arkansas court, when, if the allegations of her present petition respecting the physical condition of her former husband are true, she could have successfully maintained an action for an absolute divorce in this state, and at the same time have had the question of alimony adjudicated. Code, art. 16, secs. 15 and 38.

Moreover, under the reasoning of this court in the cases of *Emerson v. Emerson, Tabeling v. Tabeling, and Marshall v. Marshall, supra,* and authorities cited therein, we are unable to conclude that the right to maintain a proceeding for alimony may survive the dissolution of the marriage relation, since alimony is founded upon the common law obligation of a husband to support his wife, which, in the absence of some saving statute, must necessarily end by the passage of a decree effectively dissolving the marriage tie, and it seems to us that the cases in other jurisdictions adopting this view are fortified by justice and reason.

It follows that the order of the chancellor below, by which he sustained, without leave to amend, the demurrer to appellant's petition, should be affirmed.

*Order affirmed, with costs to appellee.*