## FOOTE *v.* FOOTE

[No. 107, October Term, 1947.]

172

*Decided March 18, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*E. Paul Mason, Jr.*, with whom was *J. Calvin Carney* on the brief, for the appellant.

*John Randolph Elly* for the appellee.

COLLINS, J., delivered the opinion of the Court.

On February 4, 1942, the appellant here, Frederick W. Foote, filed a bill of complaint in Circuit Court No. 2

of Baltimore City, against his wife, Emma D. Foote, appellee here, for a divorce *a vinculo matrimonii* on the grounds of desertion for a period of more than eighteen months. An answer was filed by the appellee denying the material allegations thereof. On April 4, 1942, the appellee filed a cross-bill for permanent alimony against the appellant on the grounds of desertion. The appellant answered that cross-bill denying the material allegations thereof. The cause was heard by Judge Joseph N. Ulman on April 15, 1942. At the beginning of the hearing the Judge stated that he understood that the appellant wished to amend his original bill of complaint. An amendment was thereby made by the appellant to the original bill of complaint by adding a paragraph to read: "That the husband and wife herein have voluntarily lived separate and apart, without any cohabitation, for five consecutive years prior to the filing of the Bill of Complaint and such separation is beyond any reasonable expectation of reconciliation." An answer was filed by the appellee to the amended paragraph, in which she neither admitted nor denied the allegations thereof, and put the complainant upon strict proof thereof. On April 18, 1942, Judge Ulman signed a decree "that the said Frederick W. Foote, the above named Complainant, be and he is hereby divorced *a vinculo matrimonii* from the Defendant, Emma D. Foote. And the said Complainant, Frederick W. Foote, shall be chargeable with the payment of Seventeen Dollars ($17.00) weekly as and for permanent alimony for the support of the Defendant, Emma D. Foote, payable through the Probation Department of the Supreme Bench of Baltimore City, subject to the further order of the Court."

On April 23, 1946, the appellant, Frederick W. Foote, filed in the same Court a petition alleging the aforesaid decree of April 18, 1942. He alleged that he had paid said sum regularly since the decree but that the payment had now become burdensome due to income taxes, increased cost of living, and his remarriage. He also alleged that the provision of the decree awarding the

alimony of $17.00 per week was illegal, invalid, and inequitable and that said decree should be amended by eliminating all provisions for the payment of alimony. A show cause order was passed on that petition and an answer filed by the appellee. After hearing in open Court, Judge Edwin T. Dickerson, on May 23, 1947, passed an order dismissing appellant's petition of April 23, 1946: "expressly without prejudice; with the right to file an amended Petition, a Bill of Review or a Petition for Declaratory Decree."

On June 23, 1947, Judge John T. Tucker in Circuit Court No. 2 passed an order directing that the appellant show cause why he should not be punished for contempt of court in not obeying the order of April 18, 1942, directing the payment of permanent alimony to Emma D. Foote. A demurrer was filed on July 7, 1947, by Frederick W. Foote, to that order and on the same day he filed a motion to rescind the attachment *nisi*. On July 11, 1947, after hearing in open court, where testimony was taken, Judge W. Conwell Smith ordered and decreed that the motion of July 7, 1947, to rescind, be refused and denied. He also ordered that Frederick W. Foote continue to pay the sum of $17.00 per week as permanent alimony in accordance with the decree of April 18, 1942. He further ordered that Frederick W. Foote pay at once to Emma D. Foote the sum of $119.00 being the amount admitted to be due under the order of April 18, 1942, if the same be valid, and any further arrearages due. He also ordered: "5: That payments by said Frederick W. Foote to said Emma D. Foote in compliance with this Order and said Decree, dated April 18, 1942, shall be final giving the right to said Frederick W. Foote to prosecute an appeal to the Court of Appeals of Maryland from Order of this Court bearing even date herewith and passed prior hereto overruling demurrer filed by said Frederick W. Foote to Order of this Court, dated June 23, 1947 and also appeal by said Frederick W. Foote to said Court of Appeals of Maryland from this Order." The Judge also passed an order on the same

day overruling the demurrer to the order dated June 23, 1947. From the two orders of July 11, 1947, the appellant, Frederick W. Foote, appeals to this Court.

Appellant contends that the alimony decreed in this case on April 18, 1942, by Judge Ulman is not really alimony, the non-payment of which would make the appellant subject to attachment for contempt of court.

As pointed out in the case of *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033, divorce in this State is a statutory creation and was entirely unknown to the common law. In England for years limited divorces with alimony were granted by the Ecclesiastical Courts. In Maryland, there being no Ecclesiastical Courts, the Legislature originally granted divorces. Courts of Chancery assumed jurisdiction over alimony. By the Acts of 1777, Chapter 12, Section 14, Code 1939, Article 16, Section 14, Equity Courts were given power to pass alimony orders. That Section provides: "The courts of equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there." The Ecclesiastical Courts granted alimony only in connection with limited divorces. By the Acts of 1841, Chapter 262, Code 1943 Supplement, Article 16, Section 38, Courts of Equity were given jurisdiction over all applications for divorce. It has been settled law in Maryland since the case of *Wallingsford v. Wallingsford,* 6 Har. & J. 485, that permanent alimony is a provision by the husband for the wife's support that continues only during their joint lives or so long as they live separate and apart. A decree of divorce *a mensa et thoro* or *a vinculo matrimonii* may be modified at any subsequent time as to alimony. If the allowance to a wife in the decree is the result of a previous agreement between the husband and wife and is not within the definition of alimony, so that it would have been impossible for the chancellor to have allowed permanent alimony as the decree provides, then, although the parties and even the court call it alimony,

the allowance for the wife in the decree is not alimony and a court of equity has no power on non-payment to attach for contempt. *Dickey v. Dickey,* 154 Md. 675, 678, 681, 141 A. 387, 58 A. L. R. 634; *Spear v. Spear,* 158 Md. 672, 149 A. 468; *Bart v. Bart,* 182 Md. 477, 479, 35 A. 2d 125.

In fixing the amount of alimony the court may accept the agreement of the parties as to the amount to be allowed and incorporate that amount in the decree, if the agreement is fairly made, and untainted by collusion in the procurement of the divorce. The court, of course, is not required to accept the agreement of the parties. Whether the agreement is or is not accepted by the court and incorporated in the decree, the provisions of the decree and not those of the agreement conclusively established the nature of the allowance. If the allowance in the decree falls within the definition of alimony, even though it is founded on an agreement of the parties, the court has the same power to enforce it which it would have had had there been no agreement. *Knabe v. Knabe,* 176 Md. 606, 613, 6 A. 2d 366, 124 A. L. R. 1317, and cases there cited. The definition of permanent alimony was reaffirmed by this Court in the very recent case of *Bart v. Bart,* 182 Md. 477, 479, 35 A. 2d 125, 126, *supra,* where the definition of permanent alimony was given "as 'a provision by the husband for the wife's support that continues only during their joint lives, or so long as they live separate and apart.' " Where alimony is allowed in a decree awarding a divorce *a mensa* or *a vinculo,* or in a dercree awarding alimony alone, the jurisdiction of the court as to alimony is continuing. *Knabe v. Knabe, supra.*

In the instant case it was admitted by the appellee that the amount of $17.00 per week in the original decree of April 18, 1942, was agreed upon by the parties, with the court's concurrence, as a fit and proper amount to be paid by the appellant to the appellee as alimony and incorporated in the decree. The question therefore before us is whether the allowance in the decree of April

18, 1942, founded on an agreement, was such an allowance as it would have been possible for the Chancellor to have allowed as permanent alimony in this case.

The Chancellor, in the original decree of April 18, 1942, states that the award is for "permanent alimony." In the absence of any explanation to the contrary we must accept the Chancellor's designation of his award. As stated in *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033, *supra,* it is true that the determination of what is or what is not alimony does not depend on what it is called. However, this Court cannot undertake to decide that the award made by the Chancellor was not alimony without any facts before it. The Chancellor may have been confirming an agreement between the parties but there is nothing before us to show this. He specifically reserved the right to change the award. We cannot determine that the award was something different from what it appears to be on its face. It is an award of alimony at a fixed rate for a period not longer than the joint lives of the parties, subject to further order of the Court, and there was no appeal from that decree. *Bart v. Bart,* 182 Md. 477, 479, 35 A. 2d 125, *supra.*

In *Dougherty v. Dougherty,* 187 Md. 21, 48 A. 2d 451, 457, this Court said: "In determining the award of alimony, the court should consider the maintenance of the wife in accordance with the husband's duty to support her suitably. In addition to the financial circumstances of the parties, the court usually considers their station in life, their age and physical condition, their ability to work, the length of time they lived together, the circumstances leading up to the separation, the fault which destroyed the home, and their respective responsibilities for the care and support of the children. *Timanus v. Timanus,* 178 Md. 640, 16 A. 2d 918." We have nothing before us to show that the Chancellor did not consider all of these factors.

In Maryland equity has jurisdiction to decree the payment of alimony to a wife although she does not ask for a decree of divorce. *Stewart v. Stewart,* 105 Md. 297,

66 A. 16; *Taylor v. Taylor,* 108 Md. 129, 130, 131, 69 A. 632; *McCaddin v. McCaddin,* 116 Md. 567, 568, 82 A. 554.

In interpreting voluntary separation, as now used in Acts of 1941, Chapter 90, Section 40, Article 16, Section 40, 5th sub-section, Code 1943 Supplement, this Court has said many times that in order for the separation of husband and wife to be regarded as voluntary within the meaning of the statute there must be an agreement of the parties to live separate and apart with a common intent not to resume marital relations. The word "voluntary" signifies willingness. *Campbell v. Campbell,* 174 Md. 229, 198 A. 414, 116 A. L. R. 939; *France v. Safe Deposit & Trust Co.,* 176 Md. 306, 325, 4 A. 2d 717. It was said in the case of *Kline v. Kline,* 179 Md. 10, at page 15, 16 A. 2d 924, at page 926: "The word 'voluntary' signifies willingness. When used in reference to an act of an individual, it means that he acted of his own free will; when used in reference to a common act of two or more persons affecting their common relationship, it means that they acted in willing concert in the doing of the act." In an article in the Maryland Law Review, June, 1938, Vol. II, No. 4, Page 355, the case of *Campbell v. Campbell, supra,* was discussed. It was pointed out that the five year voluntary separation statute "was projected into the divorce scene without containing any legislative solution of the myriad incidental problems in divorce procedure posed by it." One of the problems referred to was permanent alimony. That article took the view that where a divorce was granted under the five year voluntary separation statute the wife should not be awarded permanent alimony.

It is true that this Court has said as late as the case of *Staub v. Staub,* 170 Md. 202, 207 and 208, 183 A. 605, 608 (decided February 20, 1936), that: "Alimony is regarded as maintenance afforded the wife out of the income of the husband where the latter refuses to give it or where from his improper conduct he compels her to separate from him. The provision continues for the wife during their joint lives or so long as they remain

180

separate. *Wallingsford v. Wallingsford,* 6 Har. & J. 485, 489; *McCaddin v. McCaddin,* 116 Md. 567, 572, 82 A. 554; *Outlaw v. Outlaw,* 118 Md. 498, 502, 84 A. 383; *Emerson v. Emerson,* 120 Md. 584, 589, 87 A. 1033; *Polley v. Polley,* 128 Md. 60, 63, 97 A. 526; *Bishop on Marriage, Divorce and Separation,* vol. 1, p. 576; *Schouler on Marriage, Divorce and Separation,* vol. 2, pp. 1936, 1937."

However, at the time the decree in the instant case was passed, Chapter 558, Acts of 1939, Code 1939, Article 16, Section 40, 5th sub-section, provided that a divorce *a vinculo matrimonii* could be decreed "when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for five consecutive years prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation." At the time the Legislature adopted five year voluntary separation as an additional ground for a divorce *a vinculo matrimonii* it was provided, and is now provided by Code 1939, Article 16, Section 15, that: "In cases where a divorce is decreed, alimony may be awarded." In the enactment of Acts of 1939, Chapter 558, *supra,* there was no exception therein made from the provisions of Article 16, Section 15, *supra.* Therefore, under the natural and literal statutory interpretation of Code 1939, Article 16, Section 40, 5th sub-section, with Code 1939, Article 16, Section 15, it was possible for the Chancellor to allow permanent alimony to the wife in the case at bar. We see no reason to depart from the ordinary and literal construction of these two statutory provisions.

The practice in this State has been practically uniform to allow permanent alimony where the wife is granted a divorce *a mensa* or *a vinculo,* and she is without means of support, and the husband is able to support her. *Clarke v. Clarke,* 149 Md. 590, 592, 131 A. 821; *Wald v. Wald,* 161 Md. 493, 159 A. 97. Where a divorce *a vinculo matrimonii* is granted a husband on the grounds of voluntary separation of the parties, it could hardly

be contended that the grant of the divorce was not as much a grant to the wife as to the husband.

We have been referred to cases in Kentucky and Arkansas such as *Lacey v. Lacey*, 95 Ky. 110, 23 S. W. 673, and *Clyburn v. Clyburn*, 175 Ark. 330, 299 S. W. 38. However, in Kentucky by statute a divorce is granted to either party living apart without any cohabitation for five consecutive years next before application. And in Arkansas by statute a divorce is granted when the husband and wife have lived apart for three consecutive years without cohabitation. These two statutes do not present the element of "voluntary" separation which is a material element in the Maryland statute.

In Wisconsin where proof of "voluntary separation" is required, that Court, in *Salinko v. Salinko*, 177 Wis. 425, 188 N. W. 606, 607, reached the conclusion that a wife was entitled to alimony where the husband had secured a divorce on the grounds of five year voluntary separation. The point, however, was not commented upon by the court, other than its statement that: "The duty of the husband to support the wife continues after divorce except when a divorce is obtained on the ground of her adultery." This quoted statement of the Wisconsin Court goes far beyond the Maryland law.

If an exception as to the power of the courts to award alimony was to be applied in cases of voluntary separation, that exception should have been made by the Legislature and cannot be made by the courts. Construing Code 1939, Article 16, Section 40, 5th sub-section, in conjunction with Article 16, Section 15, we must affirm the orders of the Chancellor.

*Orders affirmed, with costs.*